Good morning. May it please the Court. Adam Wolfe for the appellant, Matthew Davis. I'd like to reserve about four minutes of time for rebuttal if I may. Matthew Davis had a liberty interest in not having his reputation sullied by a serious disciplinary matter. And Matthew Davis had a property interest in finishing his school year at Crescent Valley High School. And because our briefs address those issues at some depth, I want to start by addressing two different points. First, the disputed material facts in this case. And second, how the school's actions, if upheld, will affect Matthew. What facts are in dispute? Let me offer up at least seven. The first, was Matt expelled for disciplinary reasons? He wasn't expelled. Is that a question, was he expelled? He wasn't expelled. He was disenrolled. Well, they say he was disenrolled. That's a term that's found nowhere in the education code. Well, if you want to say there's something in dispute, fine. But you can't say, you know, this is sort of a premise, you know, was he expelled for, because that presupposes he was expelled. So if you start, if you phrase the question that way, you've presupposed something. One of my seven was, wasn't. You can't stop with that. You have to start with what in fact, you know, you can say that's in dispute or whatever. But once you start, if that's where you're going to go, you've got to, you know. I'm sorry, Your Honor. One of my subsequent questions, and I should have put this first, was, was Matt in fact expelled? Okay. I'm sorry about that. And why is there a dispute about that? Because if you look at the school's regulations, if you look at the education code. What does it say on the, on his record? What did they say when they notified him? When they notified him? Yeah. When they notified him, they said that he was not allowed to return back to school ever. He was not allowed to be. Did they use the word expelled? No, they didn't. I, I'm not aware if they're using the word expelled. In some ways, this is semantics, right? The question is, what actually happened to Matt? What happened to Matt is that he was told that he could. Life is semantics. You know, the law is semantics, you know. It matters very much. I mean, you know, you know, if somebody dies, it matters, you know, they're just as dead if it's murder or suicide or, or an illness. But it's not just semantics. I mean, you know, what happened here is he was somebody who was not in the district. And they said, well, you know, we, we are going to disenroll you. That's, that's, that's what they said they did. Okay. And so two points about that. I mean, our, part of our argument, Your Honor, is that. I mean, are you sort of disputing that they, in fact, expelled him? Are you saying this is sort of equivalent, disenrollment is just like expulsion? Well. You're not, you're not really saying there's a dispute as to whether he was expelled. There's a, I guess the, the, the question is what actually, what did they do to Matt, right? What are the effects of this? They told him not to come back to school. Correct. Okay. There's no dispute on that score. Okay. So that's not, that's not a disputed fact. Okay. And they also told him, and I guess this isn't disputed either, you could never return to GUSD campus. Okay. Suppose he lived there. Suppose his father had moved back. Did they say something that would pertain in that circumstance? Not that I'm aware of, Your Honor. There's nothing. So, so maybe they didn't say he could never return. Oh. No, they did. I mean, if we look at the supplement, our supplemental excerpts of record, page 26, it is very clear that he is never to return. There is no condition. What if he moved back into the district? It doesn't say, it doesn't put that as a condition. If we look at the supplemental excerpt of record 26, there is no condition on that. It just says, Supplemental excerpts of record? Correct. Okay. 26? Correct. It says student is not to be on or near any district campus. There is no condition. It doesn't say you can come call us again. So would it satisfy if we changed it and said you can't come back unless you're eligible? How long before graduation was this? This was 10 or 12 weeks. Yeah. Okay. So nobody's worried about whether he could come within that 10 or 12 weeks if his parents moved back. Well it, so it could have affected him at that time. If his parents had moved back within that 10 or 12 weeks, then you'd have no complaint if they didn't say, never, they said you can't come back until your parents move here and you're eligible? That's, it's not our only complaint. And in fact, this has a prospective effect because if he, you know, if he lives in the district and his wife and he have a child in the district, according to this admonition, he can't even go to a parent teacher conference. He can't drive on a street adjacent to the school. He can't vote on the school board. Well, I'm going to look at the whole document. First of all, I asked you the question of what it said and you sort of stumbled. You couldn't tell. But it's right here on this document on page 26. It's written down. It says disenroll. So there's no reason for you to stumble about it. It does say disenroll. And it says return to school or residence. So it's quite clear that they're not saying you're out of all schools. They're saying you're disenrolled and you have to return to, you know, you go back to your residence. Why don't you get to the heart of your argument? And then it says student is not to be on or near any campus, right? Correct. And, you know, once he becomes not a student, once he becomes something else, it may, I don't know where this applies to him at all. Once he becomes a parent, I don't see where this would apply at all. Our argument is that that was the residency issue was completely pretextual. They had, the school had determined before any of this knife incident, knowing that he didn't live in the district, that he was allowed to remain there, that he was to be a student there. The Davises twice told the school district that they didn't reside there. It let him re-enroll for the second semester and it let him continue his studies there. It was only once the knife issue came up that he was then told that he could. Yeah, so they take the view, look, we did this as an act of grace, not as an act of entitlement and we've changed our minds. That's just like it was. We've changed our minds. You know, grace comes and grace goes and we were, you know, if he were a resident, we'd have some legal obligation to him and we'd have to use legal means to, you know, here it's just we did them a favor and sometimes we're a favor of a withdrawn. That's their attitude. That's their attitude. What's wrong with that? Because that's not how property interests work. When a governmental entity grants a permit, right, they don't need to grant the permit at the beginning, let's say, but once they do, then they can't take it back. Then you have an expectation in that. And that's what happened here. They allowed him to stay. They said that, you know, they made a decision. He could stay. And then they took it away for a reason that we're saying that is pretextual. Now, there's a factual dispute about the reason that they took this away. Well, I'm not sure why that's why every time an entity does a favor, it has to be, it has to establish a property interest. Let's say you've got a school next to a church and the church has lots of parishioners come on the weekends and they work out a deal with the principal that people can park in the school parking lot on Sundays because, you know, there's no students there, there's no faculty there, and then for whatever reason, you know, they start having Sunday football games or they just have a dispute, property dispute with the church and they say, we don't want to do you a favor anymore, we're not going to let your parishioners park here anymore. Does that become a property interest? Why can't they grant a favor and then withdraw it without invoking due process or anything else? Yeah, because I think that is more, that's more of a favor. I mean, I don't think that there's, if there, it depends on whether there's an expectation. Why isn't this a favor? It depends on, because that's not. So you agree that that there's no property interest there. I realize I've spun a hypothetical and you haven't had a chance to think about it. But you can sort of see where you say, well, look, we'll do you a favor and we don't want to go through due process because we're not going to grant anybody any favors anymore. If, or, you know, let's say there is a YMCA or something and say, we want you to use your basketball courts on the weekends to do practice or your baseball field or whatever. And then, you know, for whatever reason, they say, look, we don't want to do it anymore. We're worried about liability or whatever, and we withdraw the favor. You know, they should be able to do that without invoking due process and, you know, without sort of committing you to the fact that those cases, but those strike me as cases where the school can just say no. How is this different? They say, look, we usually don't, we don't have an obligation to students who are out of the district, but you know what, we'll do him a favor and we'll let him continue because what the heck, we'll do it. Why does that create a property interest? Now, you've got your liberty argument, too, so let's put that aside. Right. No, no, I appreciate that, Your Honor. My instinct is that when you are, that it's about expectations going forward and that when you have, you know, you're generously granting the, you know, the parishioners to be able to park in that lot, that there's probably no expectation that that will continue 20 years from now, right? But education is different because you have a certain set period of time in which you're going to graduate. And so the question is, is that closer, is this situation closer to the one Your Honor just described? Or is it closer to something like Orloff, right? Because one could say the same thing in Orloff, that they just granted, you know, they allowed the employee in Orloff to continue the employment, right? They didn't have to do that, but they decided to do that. And yet, a property interest attached there, a property interest attached there for two reasons. One, because of the way that the government interacted with Mr. Orloff himself, allowing him to stay after understanding that there was some sort of wrongdoing by Mr. Orloff. The second is how that governmental entity treated prior employees, right, in other somewhat similar situations. Either of those two things led to an expectation of continued employment for Mr. Orloff, and I would say the same thing is true here. It's about expectations. Now, one other way that, and in fact the state has recognized that education is different. In a code that we cited, section 46600 I believe, it said once you receive a permit, and there was no permit here. I'm not, I'm just using this by way of analogy. Once you receive a permit, it can't be rescinded on the grounds of residency if you're in 11th or 12th grade. Why? Because you have a pedagogical interest in finishing your school, right, in finishing your schooling. If you went, if you started 12th grade there, you should be able to finish that there. You should be able to graduate with your peers. You should be, here, what happened to Matt is that he was 10 weeks away from graduating. He had learned his classes from his teachers, and he was never tested on that material, right? He was ripped out from his class. He was sent to a different school where he had to, you know, take tests based on material that he hadn't learned from teachers he didn't know. He couldn't participate in the band activities that he had been practicing for all year, right? And so there's a pedagogical interest, I think, that makes this different, and that makes it closer to Orloff. Your Honor asked also about the liberty interest, and I did want to, unless there were more questions about this, I wanted to get to liberty interest. In Goss, the Supreme Court held that when you have even a 10-day suspension, right, and we're saying that this is more here, but when you have just a 10-day suspension, that that implicates your liberty interest. Well, but how does being told you don't live here anymore, so you don't go to our school? I mean, my parents moved when I was a kid. I didn't feel ashamed because I couldn't go to the first school anymore. That's where we lived, so I went to a different school. I'm not sure I understand how this is the same as Goss or any of the expulsion cases. Sure. Because it all tears from the fact that the residency issue was pretextual, right? If this were really about residency, this wouldn't be a big deal, right? But not to have But his shame, I mean, if what is said to the world is that he doesn't live here anymore, so he goes to a different school, how does that impact his liberty interest? Expulsion is his term, not the school's. They're calling it disenrollment. They're calling it disenrollment, but he has to be honest when he answers things. I mean, if he's applying for the state bar, let's say, right? I'm not saying he is, but if you apply to the state bar, it's something we've all done, and they ask you, you know, have you ever been expelled for a disciplinary reason? I assume that's something they ask. Answer it, no. He's been disenrolled. He's calling it expulsion. The school isn't. Well, except that that's what it is under the code. I mean, I know they're calling it something else, but we expect Matthew to be honest in these, and this is what happened to Matthew. At the very least, there's a factual dispute about that, right? They're saying, no, that's not what it was. Matthew is saying, yes, that's exactly what it was. That is a classic factual dispute that needs to be resolved. The district court looked at all this and said, I know you're calling, we quoted this in our brief, I know you're calling it a disenrollment, but the effects are the same. And then the district court, in its penultimate order, said that the disenrollment was arguably tantamount to an expulsion, right? There is a factual dispute about that. That is something that. Arguably tantamount. That's a phrase only a lawyer would love. We are lawyers. I guess the person who penned that, which is the district judge, is a lawyer. I should say could love. Right. Exactly. But that's a factual matter, and there are a number of factual matters here. I'm still, again, I'm having trouble visualizing, you talked about, I don't remember, it didn't occur to me when I applied to the bar to tell them that I left Telmeutical Academy to go to, you know, to. Can we get his license revoked? Hey, this is an opportunity here. Yeah, people are listening in. I mean, I moved to Los Angeles, you know, I was obviously, I could have gone back to Baltimore for high school, but I didn't because I was now living in California. I mean, it didn't dawn on me. This is something I needed to report to anybody. No, no, you didn't need to report that because there was nothing wrapped up, I assume, Your Honor, in a disciplinary matter. I'm not saying. He has a right to remain silent. He's exerting that right. We can talk about that later, but no, the, what happened here, you know, they thought Matt brought a knife onto campus, right? They suspended Matthew as a result of that. And then Matthew is told he can't go to school anymore there, right? If Matt, Matthew's understanding of all this, and I think it's at least, you know, arguable and disputed as a factual matter, is that he couldn't return because, because of this discipline. That's what he, that's what he thinks, and I think reasonably so. And so unless the school is saying, no, Matt, you know, that's not what happened, in fact, you should lie. That is his understanding of things. So that is the dispute. That is a main dispute. I mean, there's a separate residency issue over whether, you know, I actually have a question. I guess he's no longer a minor? Matthew is no longer a minor. He wasn't a minor at the time, was he? Wasn't he over 18 by then? I guess he was, I think he was 18 at the time. I can't promise that. He was 17 or 18. Yes. So it's okay to use his name? I believe it's okay to use his name. Yeah. Okay. So, I mean, there was a secondary residency question, which we never even got to because there was no hearing, about whether residency was a proper basis to kick Matt out of school in the first place, because his father still worked in the district. Now, we didn't get to get to that because there was no subsequent hearing here. But page 30 of the supplemental, of the, excuse me, of our original excerpts of record, shows that Tom, that Tom Davis, Matt's father, worked in the district.  which we cited, which was cited before the district court, saying that that is a proper basis for remaining in the district. So this residency issue, I think, is sort of not dispositive in two ways. Well, but that's the kind of thing you can state to state court. You can bring over the mandate in the superior court. If they disenroll him, which is what they purported to do, and he has a basis for being in the district, then it seems to me that's the kind of thing you take to state court. And it's not really something that concerns us at all, is it? Oh, exactly. There's no property or liberty interest connected with it. It just sounds like a mistake of state law. Well, I guess what I was trying to show is the harm from not having a second hearing, Your Honor, is that in a hearing, we could have talked about all this. This all could have been resolved, right? And so when we're not, we're not here looking at the, necessarily at all. Would you dispute that? Would you write to school and say, hey, you can't disenroll him because he has the right to be there because his father works in the district? I know it was brought up in the district court. But I don't know if it was brought up to the district afterward. When you say you don't know, it means there's nothing in the record about it. There's nothing in the record about it. I didn't want to warrant that we did it. I'm not aware of it being done. There's nothing in the record about that, if that's correct. And, you know, if this really were just about residency, why tell him that he could never return to the school? To me, that doesn't smack of just saying, you're in the wrong school here, right? There was something, oh, and that the school found, it made a finding, according to the school district, that Matthew was a danger to the school, right? In this ten-minute hearing, the school district said, made this finding. Now, that's not the hallmark of saying you're just in the wrong school. That's not how, that's not, and this is all going to the reason that Matt believes, that this was about discipline, right? So it's not just, this is a... You are over your time. Why don't we hear from the school district? Thank you. Good morning, your honors. Anoosh Maranjan on behalf of Appalese. May it please the court, districts ruling, granting motion for summary judgment must not be disturbed on appeal. I will keep it short. Must not? Should not. Should not. Be disturbed on appeal. Why not? Well... Let's look at this document on page 26 of the Supplemental Excerpts. Just let me know when you are there. There. Okay, I'm looking at it, and the first thing I see on the page is the word expulsion. It's a little hard to say that this was not, this was just sort of, whoops, you belong in a different school district. And then, it says due process rights, and there's a whole bunch of stuff checked there, which I guess Matthew didn't get. A hearing to determine a student should be expelled. Again, the word expelled, hearing to take place within 30 days, and so on, right? Yes, your honor. Actually, this would... I mean, this was the document that... Am I right in saying that this is the document that affected his departure from the school? Yes, your honor. However, this in essence puts the cart before the horse in determining that there in fact was a property interest or liberty interest at stake. I didn't say anything about property or liberty. I just asked you some questions about this document. This is the document, right? Yes. Okay. And this document does have the word expulsion all over it. Yes, it does. All right. And it does say possessed, sold, or otherwise furnished any firearm, and so on. It talks about an offense having been committed. This is not saying, you know, a letter saying you don't belong in this school district because you're in the wrong residence. We've decided to disenroll you. This has a lot more stuff in it. Yes, your honor. And in fact... Including stuff that didn't happen, like a hearing or... I can't read all of this stuff because it's so fuzzy, but maybe required in writing, may request, you know, a hearing. There's all sorts of due process rights which were not accorded here, right? Well, your honor, again, as I mentioned, this... Just ask my question. I mean, am I right about this? No, your honor. Actually... He did get a hearing. He did get a hearing, yes, he did. And the school district went above and beyond to provide him a hearing, even though this was a disenrollment procedure, as it had gone above and beyond by allowing him to remain in the school district if that is accepted. Did he have due process of the kind that would be required if the school was dealing with the expulsion of a student who lived in the district? Yes, I believe they would. He did have a parent present. He was afforded the opportunity to give his side of the story. Appellant has cited to... Present witnesses? He has not... He did not have the opportunity to present witnesses, but this is analogous to... Well, wait a minute. But it says right here, student and parent may present oral and documentary evidence, including witnesses at hearing. Did that happen? I believe he presented his side of the story. I'm asking a question. Either yes or no. Did he have... Other than himself, in his statement that he provided, he did not have witnesses to that effect. No, your honor. However, he had... No, I'm sorry. I don't think you understood my question. Did he have an opportunity to present witnesses? No, he did not. Okay. So why do we have a document here that seems to suggest that this all happened after he was given these rights, which, in fact, you now tell me he wasn't given. Whatever else you call it, whatever you call this animal, he did not... This thing on his face purports to have been an action taken as a result of a hearing or a procedure that, in fact, wasn't followed. No, I disagree with that because, again... Which part do you disagree with? I disagree with the fact that this was not an expulsion hearing in that this was a disenrollment, that he was afforded the opportunity to tell his side of the story, again, above and beyond what should even be offered to him to begin with, because there is no, necessarily, any right for him to continue to attend there. I want to straighten out the same thing I was trying to clarify earlier. Are you contending that he received all the due process and so forth rights he would have had if he'd been living in the district but expelled? Or are you now saying that he didn't have to receive all of those because he was being disenrolled because he was out of the district? It sounds to me like it's the latter. Well, it's both, in essence. First off, my primary argument is, of course, that he didn't have a liberty or property interest such that he was entitled or was not expelled such that this procedure had to be applied. Secondarily, notwithstanding, the primary focus of the expulsion hearing was to, again, as due process, have an opportunity to be heard. He had his parents there. The district court didn't reach the second part, the secondary issue you're arguing, did it? No, it did not. It just reached the first. It did. It ruled that the appellant did not have a property interest or a liberty interest such that due process would be triggered in the first instance. So why didn't he have an interest? The school was aware that his father had moved out of the district. There's the email from the assistant principal specifically acknowledging and saying, but we don't have to do that permit thing. The school was aware of the circumstances, and yet he was allowed to stay until the knife episode comes along. Well, first, he was urged to, in fact, fill out a permit, and that was the manner in which a student who is a nonresident may attend a nonresident school. But it's the school's assistant principal who knows and says we don't have to do the permit. His particular phrase is, I don't see any need to do the permit thing. And in his deposition, I think it was Mr. Coulter, that's just kind of how we do things. He's three months from graduation, and there's no reason to disturb anything. He wasn't aware of a discipline problem at that point in time. Why doesn't that create some kind of property interest in being able to continue in the school? The school at that point is clearly aware that he's not entitled to enrollment because his family doesn't live there anymore, and yet they're letting him stay. Why doesn't that create an expectation or a common understanding that provides him with a property interest? Sure. If I can first address the fact of Mr. Coulter, the excerpts of record do not cite to any citation to the motion for summary judgment, separate statement of facts, it's just a blanket deposition transcript, which does not cite to any provision or any separate statement or citation that was presented to the court. Secondarily... I just literally read from an email that Smart doesn't exhibit, and I've read the deposition transcript in not very long. He clearly acknowledges that's just kind of this... He doesn't remember the particulars of this episode, but that's how he does things. And that's kind of how you'd hope schools would do things, so I wasn't surprised by any of it. So with that knowledge... I mean, I've got to say, your client's brief takes an aggressive position in denying knowledge, which the school plainly had. The assistant principals responsible knew that his parents were no longer living in the district, and he was fine with that. So we'll take that position for purposes of argument. Well, it's your guy that said it, so I'm taking it as true. Even though your brief didn't, I'm taking it as true. So why doesn't that create a property interest? Sure, Your Honor. This case is most likely, like the Gerhardt case cited in Appellant's brief, in that, as Your Honor was stating, the fact that you have a mere favor, for instance, does not confer a continual right. It does not... You cannot spring a property interest from a favor. The case law cited to Orloff and... You've got somebody attending school well into his last semester of high school being allowed to stay. That sounds to me like something somebody would have an understanding or an expectation or would rely upon being allowed to stay. Your Honor, but the distinctions there in the case cited to by Appellant is that there was a legitimate interest to begin with at the first instance. It wasn't an interest that was created upon of false pretense. Well, when he started at the school, his family did live in the district. And then his junior year, he attended for, I think, just one semester, maybe the whole year, he attended a private school. And it was between that and the beginning of his twelfth grade year that his father moved to Ventura or whatever. And there's some issue about working in the district and so forth. I'll focus on he moved to Ventura. And there's at least some evidence to suggest that the school was made aware of that because they had, in fact, sent the permit materials to him, which he didn't follow up on. But at least at some point, the school's aware that there's some question about his residency. He's allowed to enroll for twelfth grade. He's allowed to stay there. By March, it becomes explicit that the father does not live in the district anymore and the assistant principal says, oh, we're fine with that. Again, Your Honor, as in Gerhardt, for instance, when you don't have a property interest, which then a continual expectation can then spring from. If somebody's in March of his senior year, I think he probably expects to continue attending the school. Wouldn't you? Well, initially, as I mentioned, he did not have a legitimate interest. Perhaps in the ninth and tenth grade, he did. But that is not at issue here. What's at issue is whether he enrolled again when he returned back in his eleventh grade year to then attend as a non-district student. Now... Well, there was at least some knowledge in the part of the school early in that twelfth grade year. They had the communication with his father and the woman whose name I forget sent the permit materials, which the father didn't follow up on as he should have. But at least the issue of his residency was in the air. And I'm not sure that there really is evidence to support the proposition asserted in the brief that there was a false representation by his father. His father appeared to acknowledge that he was living in Ventura. So there was arguably some question, but I don't think I can accept as a given, and certainly not as an undisputed fact, that he got into the school in twelfth grade by fraud. Your Honor, again, for instance, Gearheart. Gearheart was an individual who went ahead, a homeowner, who built an approach. Thereafter, having already built the approach, went ahead and sought a permit to go ahead on the basis that there's ten other individuals in his neighborhood who had built the permit, the county found out about it, nothing was done about it, except for him. His permit was not granted. That was not said to be sufficient to bring forth a property interest in that instance. For instance, Orloff in Perry, we have an individual who's hired, who had repeated, for twenty years, repeated consecutive rehiring every single year. And that is springing from the initial legitimate interest of being there in the first instance, not from a favor or not from something that was illegitimate, in that he was not supposed to be in this district in the first instance. In regards to the liberty interest, of course, the, again, there is no scarlet E, so to speak. There was no expulsion that was on his record. There was no... I don't know, it says expulsion procedures, and it seems to say that he got all these rights attended to, and he's barred from campus. I can't say, looking at this piece of paper, that it says rationale, rationale for the expulsion is disenrollment, but it doesn't say that the actual action was a disenrollment. It says rationale is disenrollment. Your Honor, if there's anything that would be a harm to one's reputation, it is the fact that he was found with knives, and such that he pled no contest to knife possession, such that he had a misdemeanor criminal conviction on his record, not a mere, as you mentioned, transfer to a different school district. So in that regard... So you keep saying irrelevant things. I mean, I say potato, and you say potatoe. I point to the fact that this piece of paper has expulsion written all over it. It talks about an offense, and that it gives a rationale for the expulsion. It doesn't say that the action taken is disenrollment. It says rationale, which sounds like a reason for the expulsion. So I don't see how this isn't a harm, this isn't something that would affect his reputation. Now, you say, oh, well, you know, he's also done other things, or also other things that might harm his reputation, but so what? What does that have to do with this case? There is additional harm that can come from being expelled from school, regardless of what happened there. Again, Your Honor, he was not expelled from school, he was disenrolled. You say that, but it says expulsion right here. What does it say that the action taken is disenrollment? It says in rationale, disenrollment from CVS High School. He doesn't understand what rationale means. Rationale means the reason for it. But it's still an expulsion procedure. It talks about expulsion. Expulsion is not crossed out. He didn't use a different form. It does say offense. It does say he can't come back to campus. Because, again, the school district went above and beyond. What does that have to do with, you know, if the reason he's told not to come back is, oh, you don't belong in this district, you belong somewhere else, why have an offense there? Why have an offense? Why not leave that line blank? Why not cross out rationale saying action taken, disenrollment? Why have due process rights if it's not an expulsion? Well, Your Honor, even if the appellant wanted to assert that he had some sort of de facto permit, there is a special regulation under... We're talking reputational harm now. We're not talking property. Remember where we are in the discussion. You want to say, oh, this is nothing. You know, this is the kind of thing he could publish in the paper or put on his Facebook page and it would be swell. But it's not. I mean, you wouldn't want it on your Facebook page, right? If you have a Facebook page. Or, you know, the equivalent of that. You wouldn't want this published in the... I mean, I realize nothing like that happened to you, but let's say you had a loved one or a friend or, you know, whatever who had something like this. You would not want that person having this published in the newspaper or, you know, published on Facebook or, you know, or a flyer put on and sent around the neighborhood. You know, it would be scurrilous. It would be the kind of thing that if this were a loved one of yours, you would feel very bad for them, right? There is no... Would you? Well, that would be the case perhaps if that's what occurred, but this was not the instance. Well, but that's a... I mean, what they're fighting about is saying this thing needs to be expurgated. This thing needs to be undone. Okay? And so long as it stands as a valid document, it could happen. So you agree that this would be something that if a loved one of yours... Let's say you had a little sister that had a document like this. You'd feel very bad for her if this were sent around by email to all of her friends and employee prospective university applications, you know, where she's applied for college. You wouldn't want that. You would feel bad about it, wouldn't you? You'd feel it wouldn't help her any. There's nothing in the record to show that that would have happened in any capacity or that it, in fact, did. You understand that what you're saying is wholly irrelevant to my question. If you don't want to answer the question, that's perfectly fine. I'm just probing the question, your position, that this is no big deal because it's just a disenrollment. The fact that it's a document as it stands is not a very good document. It's a document that would be... that you would be embarrassed about if this were published about somebody that you cared about. Well, Your Honor... Isn't there a document that says what happened? I mean, this document is Expulsion Procedures, Due Process Rights. Well, Your Honor... It doesn't seem to have a determination or an action. Is there something that shows what happened at the end of this procedure? I believe, Your Honor, that this would suffice as the document to show that you would be disenrolling. And the last part is admonitions? Admonitions, you think, means final action? I believe admonitions appears to be the final statements of the school district. The first line, which just says, student is not to be on or near any district campus. That's the admonition? As the black letter in front of me, that's what it appears to state. There's no reason the school can't withdraw this document, right? Or nullify it. It can still do it, right? That has never been requested, and I'm sure it very well could be. You guys want to go talk? You're here. You know, it's lunchtime. Why don't you guys go to lunch and talk about it? And we'll defer submission for a week or so while you guys talk about what could be done. And think about your little sister. Would you really want that thing hanging around? Maybe it's water under the bridge. Maybe it's time to call it all over and let Matthew get on with his life. I don't see how he hasn't been getting on with his life. He applied to colleges. He got in. He chose not to attend. There's no facts on the record to state that he otherwise has been affected by this document. And in particular, I don't think there's any citation to the record to it. It should be easy to resolve, shouldn't it? I don't think it's going to be so easy to resolve, but it certainly doesn't do any harm. So Judge Kuczynski can have lunch. I wasn't going to have lunch. I'm on a diet myself. But I was thinking the counsel could. Why don't we defer submission in this case for about a week and you guys, if you have a settlement, you can let us know. If not, we'll decide the case. But I suggest, you know, you're all here. It's right at noon. You go talk about it. And take a look at that document and ask yourself, is this the kind of thing that you'd like to have somebody you liked have in their record? And maybe you can persuade your clients to just make it go away. In any event, we're way over time. We'll defer submission in this case. You want to talk? I'll take just 20 seconds. 20 seconds, wow. No lawyer has ever taken 20 seconds on anything, but okay. In answer to Judge Reinhardt's question, my understanding is this was the last document. I referenced a finding that the school district made at that hearing that Matthew was a danger to the school and that can be found at the appellee's excerpt of record, page 1178. I would be delighted to have lunch with my opposing counsel. I have a little sister. Okay. We'll defer submission for a week. If counsel wants us to defer submission any further, they can send us a letter. We don't hear in a week. We will go ahead and submit the case and decide it.
judges: Kozinski, Reinhardt, Clifton